**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MOMODOU DODOU NJIE,** : | |
| : | |
| **Plaintiff** : | |
| : | **CIVIL NO. 3:CV-08-2263** |
| **v.** : | |
| : | **(Judge Caputo)** |
| **TROOPER BRIAN J. LIVINGSTON,** : | |
| ***ET AL.*,** : | |
| : | |
| **Defendants** : | |

**M E M O R A N D U M**

I.  Introduction

The pro se plaintiff, Momodou Dodou Njie, an inmate formerly incarcerated at the York County Prison, in York, Pennsylvania,[1] filed this civil rights action alleging he was illegally detained, searched, arrested and interrogated by members of the Pennsylvania State Police[2] (PSP) without probable cause after a racially motivated traffic stop. Ten pounds of marijuana was discovered in the trunk of Mr. Njie's rental car. Magisterial District Judge Robert Jennings III, who arraigned Mr. Njie, is named as a defendant, as are the following members of the Dauphin County District Attorney's Office who prosecuted him for the drug charge: Edward Marsico, Jr.;

---

[1] Mr. Njie was released from the York County Prison in September 2009, and presently resides in Tennessee. (*See* Doc. 55.)

[2] The following State Police Troopers are named as defendants: Brian Livingston, Chad Ronk, Aaron Hunt, and Todd Rudy. They will be collectively referred to by the Court as the "Commonwealth defendants".

Fran Chardo; and Jenni Allen,[3]

We are currently considering the PSP defendants' motion to dismiss, Judge Jennings' motion to dismiss, and the Dauphin County defendants' motion for judgment on the pleadings. For the following reasons, the defendants' motions will be granted and the case dismissed as frivolous based on claim preclusion, otherwise known as res judicata, and prosecutorial immunity.

II.     Background and Procedural History

   *A.    The Amended Complaint.*

According to the Amended Complaint, on February 2, 2008, at approximately 10:20 a.m., Mr. Njie was traveling northbound on Interstate 81 in Dauphin County in a rented vehicle when he was stopped by Trooper Livingston for speeding. (Doc. 36, Am. Compl.)[4] Mr. Njie believes Trooper Livingston chose to stop him, and not others that day, based on his race. (*Id*. at ¶ 12.) After learning he was stopped for traveling 70 in a 65 mile per hour zone, Mr. Njie provided Trooper Livingston with his drivers license and a copy of the car rental agreement. (*Id*. at ¶ 13; and R. 27.)[5] Mr. Njie was not listed as the renter of the car. (*Id*.) At some point during the video

---

[3] The Court will collectively refer to these defendants as the "Dauphin County defendants".

[4] "In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am*., 361 F.3d 217, 222 n. 3 (3d Cir. 2004). As such, the Court is considering the exhibits attached to the Amended Complaint when reciting the background in this matter.

[5] Unless otherwise noted, all citations to the record reflect the docket number and page number assigned by the electronic case filing system (CM/ECF) rather than the page numbers of the original documents.

taped stop, Trooper Chad Ronk appeared at the scene. (*Id*. at ¶ 13 and R. 37.) Trooper Livingston issued Mr. Njie a written warning for speeding. (*Id.* at ¶ 13.) However, after Trooper Livingston smelled the odor of marijuana emanating from the car and saw several cell phones on the front seat, he asked Momodou Njie a few questions about where he was going. (*Id*. at R. 39.) Mr. Njie told Trooper Livingston that he was headed to Wilkes-Barre, Pa. to visit a sick aunt, who he knew only as "ma'am," at a hospital he could not name. (*Id*. at RR. 28 - 29.) Trooper Livingston then asked to search the vehicle to which Mr. Njie responded "absolutely not you need a search warrant." (*Id*. at ¶ 18.) Trooper Livingston then advised Mr. Njie that a new Supreme Court case allowed him to search the vehicle. (*Id*. at ¶ 20.) Mr. Njie then popped the trunk. (*Id*. at ¶ 20 and R. 29.) "Plaintiff then stepped out of the vehicle and proceeded to the rear after second taught (sic) to close the trunk". (*Id*. at ¶ 20.)[6] Trooper Ronk then ordered him "to step away restraining [Mr. Njie's] movement". (*Id*.) A search of the trunk revealed approximately 10 pounds of marijuana. (*Id*. at R. 44.) Mr. Njie was then arrested and transported to the PSP barracks for interrogation by Trooper Rudy. (*Id*. at ¶ 29.)

At the barracks, Mr. Njie's request for a telephone call and an attorney were ignored by the PSP defendants. (*Id*. at ¶ 32.) After approximately 10 hours of detention, Trooper Hunt handcuffed and transported Mr. Njie for arraignment before Magisterial District Judge Jennings. (*Id*. at ¶ 32.) Mr. Njie asserts Trooper Hunt placed the handcuffs on him excessively tight causing him permanent nerve

---

[6] Plaintiff also avers that Trooper Livingston "pulled [him] out of the vehicle." (*Id*. at ¶¶ 21 - 22.)

-3-

damage. (*Id*.) At his arraignment, where Mr. Njie was represented by counsel, Magistrate Judge Jennings set bail at $150,000, which Mr. Njie believes was inordinately high. (*Id*. at ¶ 33.) Mr. Njie believes that the Dauphin County defendants conspired with the other defendants to violate his constitutional rights when they prosecuted him for the drugs found in his rental car. (*Id*. at R. 13.)

Mr. Njie alleges his Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights were violated due to his illegal search and seizure, false imprisonment, malicious prosecution, abuse of process, and illegal arrest. He also makes claims of negligence and conspiracy. He seeks declaratory and injunctive relief as well as compensatory and punitive damages.

*B. Procedural History.*

Before filing the action at issue here, Mr. Njie filed another complaint against many of the same defendants. *See Njie v. Commonwealth of Pa.,* Civ. No. 3:08-CV-1960, 2008 WL 4948828 (M.D. Pa. Nov. 19, 2008)(*Njie I*).[7] The following were named as defendants in *Njie I*: the Commonwealth of Pennsylvania; Trooper Livingston; Trooper Ronk; Trooper Rudy; Trooper Hunt; Dauphin County Assistant District Attorney (ADA) Allen; and Magistrate Judges Jennings and Bridges. (*Id*.) The claims asserted in *Njie I,* arose out of the February 2, 2008, search of the rental

---

[7] For the convenience of the reader of this Memorandum/Opinion in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted. The Court accepts no responsibility for, and does not endorse, any product, organization, or content any hyperlinked site, or at any site to which that site might be linked. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of this Court.

vehicle Mr. Njie was driving that resulted in the discovery of 10 pounds of marijuana and ensuing drug charges. *See Njie I*. As Mr. Njie requested *in forma pauperis* standing, this Court screened the complaint in *Njie I* pursuant to 28 U.S.C. § 1915 and dismissed all claims lodged against the Commonwealth defendants in their official capacities as barred by the Eleventh Amendment. (*Id.*) Claims against ADA Allen were dismissed on the basis of prosecutorial immunity, and the claims against Magistrate Judges Jennings and Bridges were dismissed based on lack of personal involvement and judicial immunity. (*Id.*) The entire complaint was dismissed on November 19, 2008, pursuant to 28 U.S.C. § 1915(e)(2)(B). Momodou Njie did not appeal the Order.

Less than thirty days later, Mr. Njie filed the original complaint in the present matter. *Njie v. Livingston*, 3:08-CV-2263 (M.D. Pa.)(*Njie II*)(Doc. 1, Compl.) The PSP defendants and Judge Jennings filed separate motions to dismiss. (*See* Docs. 18 and Doc. 26).[8] After filing his opposition materials to both motions, Mr. Njie, filed an Amended Complaint (doc. 36), which was identical to the original complaint except that it included various exhibits related to his criminal proceedings. The Court dismissed defendants' motions as moot in light of Mr. Njie's Amended Complaint. The Commonwealth defendants then filed a second motion to dismiss raising the affirmative defense of res judicata, among others, as well as state law immunity. (*See* Doc. 41, Commonwealth Def.'s Br.) Although Mr. Njie filed an

---

[8] Based on the submission of the Amended Complaint the Court dismissed Defendant Jennings' and the PSP defendants' motions to dismiss. (*See* Doc. 45). In our Order the Court inadvertently referred to the PSP defendants' motion by the incorrect docket number which resulted in the PSP's first motion to dismiss to continue to appear as pending on the docket. Our corresponding Order in this matter today will rectify that oversight.

opposition brief, he did not address the Commonwealth defendants' argument that his Amended Complaint is barred by the doctrine of res judicata. (*See* Doc. 54, Pl.'s Br. in Opp'n to the Commonwealth Defs.' Mot. to Dismiss.) Magistrate Judge Jennings filed a motion to dismiss the Amended Complaint on the basis of, *inter alia*, res judicata and judicial immunity. (*See* Doc. 43, Def. Jennings' Br.) Mr. Njie asserts that Magistrate Jennings waived his right to assert the doctrine of res judicata as he failed to raise it as an affirmative defense. (Doc. 52, Pl.'s Br. in Opp'n Def. Jennings' Mot. to Dismiss at RR. 13 - 16.) Alternatively, he says he "did not have a fair opportunity to litigate his last suit" and thus should be allowed to proceed with his present action. (*Id*. at R. 14.) The Dauphin County defendants have moved for judgment on the pleadings based on prosecutorial immunity and Mr. Njie's failure to state a claim. (*See* Doc. 50, Dauphin County Defs.' Brf.) Mr. Njie did not file a brief in opposition to the Dauphin County defendants' motion for judgment on the pleadings.

III. Standard of Review

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d

224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d. 929 (2007), a complaint has to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955 at 1974. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, __ U.S. __, __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)(quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965). "[L]abels and conclusions" are not enough, *Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964-65, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.*, 127 S.Ct. at 1965 (quoted case omitted).

In resolving the motion to dismiss, we "conduct a two-part analysis." *Fowler, supra*, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. *Id.* at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a '"plausible claim for relief."' *Id.* at 211 (quoted case omitted). In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 - 235 (3d Cir. 2008).

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "after the pleadings are closed but within such time as to

not delay the trial." Fed.R.Civ.P. 12(c) A motion for judgment on the pleadings under Rule 12(c) is decided under the same standard as that for a motion to dismiss under Fed. R. Civ. P. 12(b). *See Spruill v. Gillis*, 372 F.3d 218, 223 fn. 2 (3d Cir. 2004)("There is no material difference in the applicable legal standards.")

Finally, we note that pro se pleadings are held to a less stringent standard than formal pleadings drafted by attorneys and are to be liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). Pro se litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Phillips*, 515 F.3d at 245 - 246 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). However, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 106 (3d Cir. 2002).

IV.     Discussion

    A.     *Res Judicata*

Under the doctrine of res judicata, or claim preclusion*,* a final judgment on the merits in a prior action serves as a bar to the parties (and those in privity with them) from relitigating issues that were or could have been raised in that action. *Federated Dept Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69

L.Ed.2d 103 (1981); *Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384, 392 (3d Cir. 2002). "In order to prevail on a defense of res judicata, a defendant must demonstrate that there has been: (1) a final judgment on the merits in a prior suit; (2) involving the same parties or their privies; and (3) a subsequent suit based on the same cause of action." *Elkadrawy v. Vanguard Group, Inc.*, 584 F.3d 169, 172 (3d Cir. 2009).

A determination of whether two suits involve the same cause of action turns on whether there is an "essential similarity of the underlying events" giving rise to the claims. See *U.S. v. Athlone Indus., Inc.*, 746 F.2d 977, 983 - 984 (3d Cir. 1984). Two law suits are the same when they both arise out of the same nucleus of operative facts, or are based upon the same factual predicate. *Elkadrawy*, 584 F.3d at 173.

A dismissal of a complaint for failure to state a claim is a final judgment on the merits and thus has res judicata effects. See *Moitie,* 452 U.S. at 399 n. 3, 101 S.Ct. at 2428 n. 3 ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'"). Likewise, as the legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) is identical to the legal standard when ruling on 12(b)(6) motions, when a pro se complaint brought *in forma pauperis* is dismissed for failure to state a claim under § 1915(e)(2)(B), it too is a final judgment on the merits. See *Porter v. Cancelmi*, 318 Fed. Appx. 48, 50 n. 2 (3d Cir. 2008)(citing *Cieszkowska v. Gray Line New York*, 295 F.3d 204, 205 - 206 (2d Cir. 2002)(per curiam)).

The Commonwealth defendants and Magisterial District Judge Robert Jennings contend that all of Mr. Njie's claims asserted in his Amended Complaint are barred by the res judicata effect of this Court's resolution of *Njie I*. (Docs. 41 and 49.) These defendants argue that all three conditions for relief on this ground have been met.

First, there is little dispute that the two suits arise out of the same transactional nucleus of facts. Mr. Njie's newest complaint is clearly based upon the same transaction and occurrences at the center of his previous action, *Njie I*: the February 2, 2008, stop and search of Mr. Njie's vehicle and subsequent criminal charges. His present Amended Complaint (*Njie II*) does not differ in any significant way from the claims set forth in his prior action (*Njie I).*

As to the next element, Momoduo Njie, however, argues that he "did not have a fair opportunity to litigate his last suit, he did not agree to mutual estoppel with defendants," and that his incarceration combined with his limited access to the law library "made it extremely difficult and almost impossible to get a fair opportunity to litigate the last matter." (*Id*. at R. 14.) Thus, he should be allowed to reassert his claims in the present action. Momodou Njie's position is unsupported.

The Supreme Court of the United States has held that the doctrine of res judicata applies even though a plaintiff may view the first case as having been erroneously decided. *Moitie*, 452 U.S. at 398 - 399, 101 S.Ct. at 2428 ("Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle

subsequently overruled in another case")  Dissatisfied litigants, like Mr. Njie, who believe that their unsatisfactory litigation results are based on legal error can attempt to correct the situation "only by a direct review and not by bringing another action upon the same cause [of action]." *Id*. (citation omitted).  If Mr. Njie felt that his ability to litigate *Njie I* was hampered by his imprisonment or the activities of prison officials, or that it was decided incorrectly, then his remedy was to seek reconsideration of our order in *Njie I,* or appeal the matter to the Third Circuit Court of Appeals.  He did neither.  Whether Mr. Njie felt that he had a fair opportunity to litigate his previous action cannot be resolved in this case.  The correctness of the resolution of *Njie I* can only be argued or reexamined within the context of an appeal of that matter, not by filing a new action.  *Moitie*, *supra*.  As *Njie I*, a claim brought *in forma pauperis,* was dismissed pursuant to 28 U.S.C. § 1915 (e)(2)(B), and was not successfully appealed, it constitutes an adjudication on the merits for res judicata purposes.  *See Porter*, *supra*.

     As to the final element, the congruency of the parties, all of the present Commonwealth defendants were named in *Njie I*, as was Magisterial District Judge Robert Jennings.  Based on the above analysis, the Amended Complaint will be dismissed with prejudice against the Commonwealth defendants and Magesterial District Judge Jennings as it is barred by the doctrine of res judicata.

B.  *Prosecutorial Immunity*

District Attorney Edward Marsico, Jr., First District Attorney Fran Chardo and Assistant District Attorney Jenni H. Allen seek judgment on the pleadings on the basis on prosecutorial immunity.[9] The Dauphin County defendants offer a copy of Mr. Njie's criminal docket related to the drug charge.[10] (*See* Doc. 29-2; *see also* http://ujsportal.pacourts.us/DocketSheets/CPReport, *Commonwealth v. Njie*, CP-22-CR-0000721-2008 (Dauphin Co.)). Momoduo Njie was arranged in the Court of Common Pleas of Dauphin County for drug charges on March 21, 2008. Thereafter, Mr. Njie filed a Motion to Suppress Evidence. Following a hearing before the Honorable Jeannine Turgeon of the Dauphin County Court of Common Pleas, the Court granted Mr. Njie's motion. Thereafter, on October 31, 2008, the Dauphin County District Attorney's Office filed an application for a Nolle Prosequi which Judge Turgeon granted on November 4, 2008.

"[A] state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit under § 1983. *Imbler v. Pachtman*, 424 U.S. 409, 410, 96 S.Ct. 984, 985, 47 L.Ed.2d 128 (1976)(holding that a prosecutor has absolute immunity initiating and pursuing criminal prosecution for those activities intimately associated with the judicial phase

---

[9] Where a plaintiff has failed to timely file an opposition brief, the court will deem the motion as unopposed. M.D. Local Rule 7.6. Although served with the Dauphin County defendants' motion, he did not file an opposition brief or other response.

[10] "In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of America*, 361 F.3d 217, 222 n. 3 (3d Cir. 2004).

of the criminal process). *Imbler* defined the scope of prosecutorial immunity not by the identity of the actor, but by reference to the "function" performed. *Id*., 424 U.S. at 430, 96 S.Ct. at 995. Those acts that are "intimately associated with the judicial phase of the criminal process" would be shielded by absolute immunity, but not "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." *Id*., 424 U.S. at 430 - 431, 96 S.Ct. at 995. However, the scope of prosecutorial immunity is not without limits. *See Jaslar v. Zavada*, 3:CV-05-2080, 2009 WL 82553 (M.D. Pa. Jan. 12, 2009)(prosecutor who fabricates evidence presented to grand jury or destroys exculpatory evidence is not entitled to absolute immunity).

Here, Mr. Njie alleges a § 1983 claim against the Dauphin County defendants, with respect to their actions in pursuing criminal charges against him after Pennsylvania State Police officers discovered 10 pounds of marijuana in the trunk of his rental car. The Court finds that the prosecuting defendants' role in the events described in the Amended Complaint, and the criminal docket, clearly fall within the traditional scope and function of prosecutorial duties in initiating and pursuing a criminal prosecution against Momoduo Njie. Therefore, any purported claim of prosecutorial misconduct, or other allegation of wrongdoing, against the Dauphin County defendants, are subject to dismissal for failure to state a claim.

These defendants are also entitled to high official immunity with respect to the state common law claims asserted in the Amended Complaint. As noted in *Jaslar*,

> It has long been held [in Pennsylvania] that high public officials are immune from suits seeking damages for actions taken or statements made in the course of their official duties. The Pennsylvania Supreme Court has explained that it is in the public interest and therefore sounder and wiser public policy to 'immunize' public officials, for to permit slander, or liable, or malicious prosecution suits, where the official's charges turn out to be false, would be to deter all but the most courageous or the most judgment-proof public officials from performing their official duties and would thus often hinder or obstruct justice and allow many criminals to go unpunished.

*Jaslar*, 2009 WL 82553 at *11 (citations and quotations omitted). District attorneys and assistant district attorneys are recognized as "high public officials". *Gregg v. Pettit*, Civ. A. No. 17-1544, 2009 W: 57118, *7 (W.D. Pa. Jan. 8, 2009)(citing *Durham v. McElynn*, 565 Pa. 163, 772 A.2d 68 (Pa. 2001)); *see also Douris v. Schwiker*, 229 F. Supp.2d 391 (E.D. Pa. 2002).

In the instant case, the Dauphin County prosecutors are entitled to absolute immunity from all state law claims because the complained of actions all took place during the course of their official duties as prosecutors.

The court will issue an order consistent with this memorandum.

/s/ A. Richard Caputo
**A. RICHARD CAPUTO**
**United States District Judge**

**Date: February 9, 2010**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MOMODOU DODOU NJIE, | : |
| Plaintiff | : |
| | : CIVIL NO. 3:CV-08-2263 |
| v. | : |
| | : (Judge Caputo) |
| TROOPER BRIAN J. LIVINGSTON, *ET AL.*, | : |
| | : |
| Defendants | : |

# O R D E R

**AND NOW,** this __9th__ day of **February, 2010**, it is ordered that:

1. The Commonwealth Defendants' Motion to Dismiss the Complaint (doc. 26) is dismissed as moot.

2. The Commonwealth Defendants' Motion to Dismiss the Amended Complaint (doc. 40) is granted.

3. All claims against Trooper Livingston, Trooper Ronk, Trooper Hunt, and Trooper Rudy are dismissed as they are barred by the doctrine of res judicata.

4. Magisterial District Judge Jennings' Motion to Dismiss (doc. 42) is granted.

5. Edward Marisco, Jr., Jenni Allen and Fran Chardo's Motion for Judgment on the Pleadings (doc. 49) is granted.

6. The Clerk of Court shall close this file.

                                        **/s/ A. Richard Caputo**
                                        **A. RICHARD CAPUTO**
                                        **United States District Judge**